**Affirm in Part, Reverse and Render in part, and Remand and Memorandum Opinion filed July 2, 2026**



In The

# Fifteenth Court of Appeals

## NO. 15-25-00115-CV

**TEXAS ASSOCIATION OF SCHOOL BOARDS RISK MANAGEMENT FUND, Appellant**

**V.**

**SOUTHWEST TEXAS JUNIOR COLLEGE, Appellee**

**On Appeal from the 83rd Judicial District Court**
**Val Verde County, Texas**
**Trial Court Cause No. 2023-0279-CIV**

## MEMORANDUM OPINION

Appellant Texas Association of School Boards Risk Management Fund (the "Fund") agreed to provide property insurance coverage to appellee Southwest Texas Junior College (the "College"). After a wind and hail event damaged the College's property, the College sued the Fund, alleging that the Fund breached their agreement by failing to pay out a submitted claim for coverage. The College sought actual and consequential damages and also raised affirmative defenses that it was not required

to comply with certain provisions in the agreement. In response, the Fund filed a partial plea to the jurisdiction and later a motion for summary judgment arguing that the College's affirmative defenses and request for consequential damages were barred by governmental immunity. The College then cross-moved for partial summary judgment, requesting summary judgment on some of the affirmative defenses the Fund raised in its most recent answer—which included the Fund's governmental immunity defense. The trial court denied the Fund's plea to the jurisdiction and granted the College's partial summary judgment motion.

The Fund appealed both orders. During the pendency of this appeal, the College filed a motion to dismiss based upon its nonsuit of certain claims below, but live issues remain. We hold that the College's affirmative defenses to the contract are not barred by governmental immunity, but that the College's claim for consequential damages is barred. Therefore, we affirm in part, reverse in part and remand. We further deny the College's motion to dismiss this appeal for lack of jurisdiction.

## BACKGROUND

The Fund is a self-insurance risk pool entity created by contract between local government entities designed to provide insurance coverage to these member entities, which now total over 1,000. The Fund administers this self-insurance coverage program. To be a Fund member and thus receive coverage, a local government must enter the Interlocal Participation Agreement ("Interlocal Agreement") with the Fund's other members. Entering the Interlocal Agreement allows a Fund member to participate in one of the Fund's programs, including the Fund's property coverage program, which is at issue here. Participation in a Fund program requires that the Fund execute a Contribution and Coverage Summary ("CCS") for each program the Fund member wishes to participate in. Incorporated

2

within each CCS is a document—here, the Property Coverage Agreement—that sets out the scope of coverage and services from the Fund for the specific program in which the Fund member participates.[1]

The College became a Fund member when it entered the Interlocal Agreement in 2012. The associated Coverage Documents executed by the College provide coverage for wind and hail property damage. In April 2020, the College's property was damaged by a wind and hailstorm event. The College filed a claim with the Fund a few days later, which the Fund investigated.

The Coverage Documents require the Fund member to elect one of two options within 180 days of a contractually defined loss: (1) the option "to repair or replace the **Covered Property** subjected to the **Loss**" and be reimbursed for amounts the member has actually and necessarily spent ("replacement cost value" or "RCV"); or (2) the option "to receive a payment for the Actual Cash Value (ACV) of the **Covered Property** subjected to **Loss**." The RCV option requires the "[r]epair or replacement must be complete within 365 days of the above election notice to the Fund, unless an extension is requested in writing by the Fund Member and granted by the Fund within this same period."

The College did not make a written election between ACV or RCV for its alleged loss. The Fund nonetheless issued a payment of $1,241,309.63 to the College on November 10, 2023, which the Fund asserts was an ACV payment. The Fund had also granted the College four extensions up to February 2023 for the 365-day repair and replace deadline, but the College did not make repairs or replacements costing in excess of the $1,241,309.63 payout.

---

[1] We refer to both the CCS and the Property Coverage Agreement collectively as the "Coverage Documents."

The College sued the Fund and the Fund's adjuster, alleging breach of contract against the Fund and bringing separate claims against the adjuster. The College alleges that the Fund breached the Coverage Documents by failing to pay the College "adequate compensation" for its damaged property due to the wind and hail event, a loss the College argues is covered by the agreement. The College seeks relief in the form of actual and consequential damages, reasonable and necessary attorney's fees, and pre- and post-judgment interest. The College also asserted affirmative defenses that the Coverage Documents contain provisions that are void, unconscionable, and waived by the Fund.

The College later non-suited its claims against the Fund's adjuster, leaving the Fund as the only defendant. The Fund filed a partial plea to the jurisdiction arguing that government immunity barred the College's affirmative defenses and request for consequential damages. The Fund argued that the College's affirmative defenses were barred by immunity because they are equitable, extra-contractual claims for relief. The plea also contained an amended answer, which raised the Fund's own affirmative defenses of governmental immunity, unsatisfied conditions precedent, denial of notice of loss, coverage exclusions, and other contract-related defenses.

The College filed an amended petition, which added a claim against the Fund for breach of the duty of good faith and fair dealing. The Fund moved for summary judgment on both the merits and jurisdictional grounds, incorporating the grounds in its jurisdictional plea and further arguing the new breach of the duty of good faith and fair dealing claim was also barred by immunity. The College then moved for partial summary judgment against The Fund's affirmative defenses of governmental immunity, unsatisfied conditions precedent, denial of notice of loss, and coverage exclusions. The trial court issued orders denying the Fund's plea to the jurisdiction

4

and granting the College's partial summary judgment motion.

The Fund filed a notice of appeal under Section 51.014(a)(8) of Texas Civil Practice & Remedies Code contesting both of these orders, as well as the implicit denial of "the Fund's jurisdictional challenges raised in both the Fund's Motion for Summary Judgment (filed 3/26/25) and the Fund's Response to the College's Motion for [Partial] Summary Judgment (filed 5/5/25) concerning the immunity-barred claims as asserted in the College's First Amended Petition (filed 11/13/24)." While this appeal was pending, the College filed a notice of non-suit in the trial court, non-suiting its breach of the duty of good faith and fair dealing claim and its defense of unconscionability. The College then filed a contested motion to dismiss with this Court, requesting we dismiss this appeal as moot because the College has non-suited all claims upon which the Fund has based its plea to the jurisdiction.

## STANDARD OF REVIEW

"Governmental immunity from suit defeats a court's subject matter jurisdiction" and so is properly raised in a plea to the jurisdiction. *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). We review a trial court's ruling on a plea to the jurisdiction, including any questions of statutory construction, de novo. *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019). A plea to the jurisdiction "may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When a plea to the jurisdiction challenges the pleadings, we must determine whether the pleader has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020).

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we look beyond the pleading and consider the relevant evidence submitted by the

5

parties when necessary to resolve the jurisdictional issue raised. *Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 241 (Tex. 2020). In evaluating an evidentiary plea to the jurisdiction, the standard of review "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). The plaintiff bears the burden to allege facts that affirmatively demonstrate the trial court's subject matter jurisdiction. *Rangel*, 595 S.W.3d at 205. The evidence is reviewed in the light most favorable to the nonmovant to determine whether a genuine issue of material fact exists. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 552 (Tex. 2019). If the evidence creates a fact question regarding the jurisdictional issue, the trial court may not grant the plea, and the fact issue will be resolved at trial by the fact finder. *Miranda*, 133 S.W.3d at 227–28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 228. Here, the plea contests both the pleadings and the jurisdictional facts.

## ANALYSIS

The Fund challenges the trial court's order denying its governmental immunity defense in its plea to the jurisdiction, motion for summary judgment, and response to the College's partial motion for summary judgment. The Fund argues that governmental immunity bars (1) the affirmative defenses the College raises as related to its breach of contract claim against the Fund and (2) the College's request for consequential damages as to its breach of contract claim. The Fund does not contest that immunity is waived for the breach of contract claim itself.

The College also filed a motion to dismiss with this Court arguing (1) that this appeal should be dismissed as moot because the College has non-suited all claims and allegations on which the Fund's plea to the jurisdiction are based, (2) that this

6

Court does not have jurisdiction to hear this appeal as it relates to the trial court's order granting the College's partial summary judgment order, and (3) that the trial court's order is not subject to the automatic stay under Section 51.014(c)(2) of the Texas Civil Practice & Remedies Code for the duration of this appeal. We address these issues in turn.

## I. Governmental Immunity.

### A. Governmental Immunity Does Not Bar the College's Defenses.

Under the Texas Local Government Code, "[a] local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract . . . ." Tex. Loc. Gov't Code § 271.152. The parties do not dispute that the Fund is a local government entity.

The Fund contends that the College cannot seek replacement cost value damages under the Coverage Documents because the Coverage Documents required the College to fully repair its damaged property within the extended 365-day deadline, which undisputedly failed to occur. The College's pleadings raise affirmative defenses that certain conditions precedent in the Coverage Documents cannot be enforced because they are void and waived.[2] Specifically, the College

---

[2] The College argues that it also raised the affirmative defense of estoppel in its pleadings, citing language in its petition stating that the College was unable to perform under the contract by making repairs to its property because the Fund failed to pay the amount owed under the Coverage Documents. However, this language is under the College's breach of the duty of good faith and fair dealing claim section in its live pleadings and is stated as a *consequence* of the Fund's breach of that duty and is not presented as a defense, estoppel or otherwise. *Med. Imaging Sols. Grp., Inc. of Tex. v. Westlake Surgical, LP*, 554 S.W.3d 152, 159 (Tex. App.—San Antonio 2018, no pet.) ("An affirmative defense must be stated in sufficient detail to give the plaintiff fair notice of what the defensive issue is and the relief that will be sought at trial."); Tex. R. Civ. P. 94. Moreover, the College has since non-suited this claim. Consequently, the College did not raise estoppel as an affirmative defense in its live pleadings, and we do not consider it on appeal here. The College

7

argues that its defenses render the RCV repair deadline unenforceable because of the Fund's conduct in underestimating and refusing to pay the College's loss.

In its first issue, the Fund contends that the College's affirmative defenses are being asserted offensively and are in fact claims seeking to rewrite the express terms of the Coverage Documents by voiding the College's obligations therein and creating coverage where none existed before. The Fund also argues that governmental immunity bars affirmative defenses seeking relief based upon equitable theories. The Fund further argues that it has conclusively established that the College's affirmative defenses do not apply.

The College responds that its affirmative defenses are part and parcel of its breach of contract claim and so the immunity waiver that applies to breach of contract claims against local governmental entities also applies to these defenses against enforcement of particular provisions. The College also responds that the Local Government Code contains a separate provision, Section 271.155, waiving immunity for affirmative defenses. The College further contends that its defenses are being asserted defensively, not offensively, and do not seek independent relief separate from its breach of contract claim. Lastly, the College responds that equitable estoppel can be asserted against the Fund because justice so requires and there is no interference with the exercise of governmental functions. We agree with the College that its affirmative defenses[3] are part and parcel of its breach of contract claim and

---

initially raised unconscionability as an affirmative defense as well but has since nonsuited that defense.

[3] We note that, although the College raised the defenses in its petition and not a responsive pleading, the defenses are still affirmative defenses. "An affirmative defense is '[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true.'" *Godoy v. Wells Fargo Bank, N.A.*, 575 S.W.3d 531, 536 (Tex. 2019) (alteration in original) (quoting *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 155–56 (Tex. 2015)). "[I]f the plaintiff raises an affirmative defense to counter the defendant's affirmative defense, the plaintiff has the burden of raising a fact issue on each element

so the immunity waiver encompasses them.[4]

The College seeks to recover RCV damages under the Coverage Documents for its damaged property. The College raises its affirmative defenses—voidness and waiver—to avoid conditions precedent in the Coverage Documents—such as the requirement that the College repair its property within 365 days to be entitled to RCV damages—in order prevail on its breach of contract claim and acquire these damages. As such, the College is seeking an excuse from complying with certain contractual provisions—not relief or damages. These defenses do not stand on their own but are rather means to the end of prevailing on the College's breach of contract claim. That makes these defenses a part of the College's breach of contract claim, thus subjecting them to the immunity waiver under Section 271.152 of the Texas Local Government Code.

Our position aligns with that of the Fifth Court of Appeals in *City of Mesquite v. PKG Contracting, Inc.*, which stated "[o]nce the trial court determines whether the contract falls within the provisions of section 271.152, it need not parse further

---

of his own affirmative defense to avoid the granting of summary judgment." *Garza v. Williams Bros. Const. Co., Inc.*, 879 S.W.2d 290, 295 (Tex. App.—Houston [14th Dist.] 1994, no writ). Rule 94 of the Texas Rules of Civil Procedure, which concerns the pleading of affirmative defenses, "applies to all parties, not just defendants." *Simmons v. Compania Financiera Libano, S.A.*, 830 S.W.2d 789, 792 (Tex. App.—Houston [1st Dist.] 1992, writ denied). "[I]n order for a plaintiff to rely on an affirmative defense . . . to defeat a defendant's affirmative defense, the plaintiff must allege it in a petition or supplemental petition." *Securitycomm Grp., Inc. v. Brocail*, No. 14-09-00295-CV, 2010 WL 5514333, at *11 (Tex. App.—Houston [14th Dist.] Dec. 28, 2010, pet. denied) (mem. op.); *Casa Palmira, LP v. Taylor Child Care, LP*, 632 S.W.3d 11, 30 (Tex. App.—El Paso 2020, no pet.) (same). Here, the College's allegations in its petition that certain contractual conditions precedent are waived or void respond, at a minimum, to the Fund's affirmative defenses of unsatisfied conditions precedent and governmental immunity. The College bears the burden to present evidence demonstrating how its affirmative defenses defeat the Fund's affirmative defenses. *Garza*, 879 S.W.2d at 295.

[4] As this disposition resolves this issue, we do not reach whether Texas Local Government Code Section 271.155 contains an immunity waiver provision for affirmative defenses, whether the College's defenses are being asserted offensively or defensively, or whether justice requires the application of equitable estoppel.

the pleadings or the contract to determine whether the legislature has waived immunity for breach of contract claims." 263 S.W.3d 444, 447 (Tex. App.—Dallas 2008, pet. denied); *Lower Valley Water Dist. v. Danny Sander Constr., Inc.*, 587 S.W.3d 823, 827 (Tex. App.—El Paso 2019, no pet.) (citing *City of Mesquite*, 263 S.W.3d at 447); *Clear Creek Indep. Sch. Dist. v. Cotton Com. USA, Inc.*, 529 S.W.3d 569, 585 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (same). Although the Texas Supreme Court later disapproved of *City of Mesquite* "to the extent" it held that immunity was waived "on a claim for damages not recoverable under Section 271.153 [of the Texas Local Government Code]," *Zachry Const. Corp. v. Port of Hous. Auth.*, 449 S.W.3d 98, 110 & n.54 (Tex. 2014), the Texas Supreme Court has not critiqued *City of Mesquite's* conclusion as it pertains to affirmative defenses to enforceability of individual contract provisions.

The Fund objects that affirmative defenses asserted against governmental entities are barred by immunity. The Fund cites *Prairie View A & M University v. Chatha* in support, which states "[t]he potential absence of equitable defenses against governmental entities that retain their immunity is sovereign immunity's most basic tenet." 381 S.W.3d 500, 515 (Tex. 2012). This argument misunderstands this statement in *Chatha*. This statement was made in the context of determining whether a statute of limitations provision was jurisdictional—namely, the requirement for a claimant to file a pay discrimination complaint with a state or federal agency within 180 days of the alleged discriminatory pay decision. *Id.* at 510, 515. The Court held that this statutory requirement was jurisdictional and dismissed the case because the claimant did not timely file her complaint. *Id.* at 515–16. The dissent objected, noting its concern that under the Court's holding equitable defenses against the applicability of limitations to a claim would be allowed "against private employers but not governmental ones." *Id.* at 524 (Jefferson, C.J., dissenting). It is

10

in response to this concern that the Court states that such equitable defenses would be barred by immunity. *Id.* at 515.

The circumstances in this case materially differ. The point of contention between the majority and dissent was whether the limitations bar was jurisdictional or not, not whether an immunity waiver applied. *Id.* at 515–16; *id.* at 524 (Jefferson, C.J., dissenting). Here, the parties do not dispute that an immunity waiver applies to the College's breach of contract claim. *See* Tex. Loc. Gov't Code § 271.152. The dispute before us is what that waiver encompasses. Section 271.152's immunity waiver encompasses the defenses asserted by the College because they are inextricably tied to the issue of whether the Fund breached its contract with the College. For instance, the Fund argues that the College cannot recover RCV damages under the Coverage Documents because it failed to make the timely election for RCV coverage and otherwise failed to repair its damaged property within the extended 365-day deadline. The Fund contends that, because the College failed to timely make these repairs, the College is not entitled to coverage in the first instance because the RCV option in the Coverage Documents provides only reimbursement coverage—it does not allow payment prior to work having been performed. The College argues that its affirmative defenses excuse the College from complying with these conditions before it could recover RCV damages under the contract.

Resolving these disputes would require us to interpret the terms of the Coverage Documents. We would have to assess whether the College's failure to make its timely election and repairs constitute a "material breach," which excuses the non-breaching party from performance, or a "nonmaterial breach," which does not excuse the non-breaching party from performance. *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017) (per curiam). It

would also require us to interpret the Coverage Documents to determine whether RCV coverage is only triggered after repairs are made. Our decisions on such issues would touch on the merits of the College's breach of contract claim, thus demonstrating that the affirmative defenses are intertwined with this claim.[5] The Fund argues that the plain language of the Coverage Documents unambiguously bars the College's recovery, but the College at this stage of the proceedings only needs to "plead facts with some evidentiary support that constitute a claim for which immunity is waived, not that the claimant will prevail." *Zachry*, 449 S.W.3d at 110; *Campbellton Rd., Ltd. v. City of San Antonio*, 688 S.W.3d 105, 123 (Tex. 2024) ("A dilatory plea's purpose 'is to defeat a cause of action without regard to whether the claims asserted have merit,' 'not to force the plaintiffs to preview their case on the merits.'" (quoting *Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448, 453 (Tex. 2016))). The College's pleading of its breach of contract claim, which the parties acknowledge is subject to the Section 271.152 immunity waiver, suffices to meet this standard.[6]

The Fund objects that the College is asserting its affirmative defenses not to

---

[5] These circumstances also separate this case from the other two courts of appeals decisions that the Fund cites in support of its position that affirmative defenses are barred by immunity. *H & H Sand & Gravel, Inc. v. City of Corpus Christi*, No. 13-06-00677-CV, 2007 WL 3293628 (Tex. App.—Corpus Christi–Edinburg Nov. 8, 2007, pet. denied) (mem. op.); *Enter. Leasing Co. of Hous. v. Harris Cnty. Toll Rd. Auth.*, 356 S.W.3d 85 (Tex. App.—Houston [1st Dist.] 2011, no pet.). *H & H* involved the assertion of estoppel, waiver, and detrimental reliance as *claims* and not defenses. *H & H*, 2007 WL 3293628 at *3. *Enterprise* concerned a party asserting estoppel and waiver to prevent a governmental entity from enforcing a statute and did not involve the scope of an immunity waiver provision. *Enterprise*, 356 S.W.3d at 87–90. Neither case involved the circumstances here, where resolution of affirmative defenses would also require resolving the merits of a claim waived by immunity.

[6] This holding disposes of the Fund's objection that the College failed to raise a fact issue that its affirmative defenses apply. As the College's breach of contract claim encompasses the defenses here, the College successfully demonstrating waiver for that claim also waives immunity for the defenses.

12

enforce the express terms of the Coverage Documents but rather to "create new and different RCV coverage for itself" that does not require the College to make actual repairs to its damaged property before seeking RCV damages. The Fund argues the College's "offensive" use of its defenses attempts to create RCV coverage where none previously existed under the Coverage Documents and is barred by immunity. To reach this conclusion, however, the Fund interprets the meaning of RCV coverage under the Coverage Documents, arguing that the College's breach of contract claim fails "because the express terms of the Coverage Documents do not provide RCV coverage for hypothetical repairs to, or the replacement of damaged property, that have not actually and necessarily been made." As discussed above, the College at this stage of the proceedings need only "plead facts with some evidentiary support that constitute a claim for which immunity is waived, not that the claimant will prevail." *Zachry*, 449 S.W.3d at 110. The College has undisputedly done so with its breach of contract claim. Determining whether the College is entitled to RCV coverage would amount to resolving whether the College "will prevail" on its breach of contract claim, which goes too far at this stage of the proceedings. *Id.*

Finally, the College argues in its motion to dismiss that, because its affirmative defenses are part and parcel of its breach of contract claim, this appeal should be dismissed as moot because the College has non-suited all claims and allegations that form the basis of the Fund's plea to the jurisdiction. We disagree. Notwithstanding the fact that the College's affirmative defenses are encompassed in its breach of contract claim, the issue of whether the College's request for consequential damages is barred by immunity—as discussed below in Part I.B—remains live.

We overrule the Fund's first issue.

**B. Governmental Immunity Bars The College's Request for Consequential Damages.**

In its second issue, the Fund argues that the College's request for consequential damages is barred by immunity under Section 271.153. The College responds that an exception to the immunity bar in Section 271.153 for "owner-caused delays" applies. We agree with the Fund.

Section 271.153 states that "[d]amages awarded in an adjudication brought against a local governmental entity arising under a contract" may not include "consequential damages . . . ." Tex. Loc. Gov't Code § 271.153(b). However, an exception to this bar is "any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration . . . ." *Id.* § 271.153(a)(1). The College argues that the Fund's failure to timely pay the property coverage benefits owed under the Coverage Documents resulted in increased costs of construction for the College. The College contends that these costs are "owner-caused delays" because the Fund "owns" the risk management program administering property coverage and the "delay" of the Fund's refusal to pay coverage benefits "caused" the College's increased construction costs.

The College misconstrues Section 271.153. Section 271.153 does not define "owner-caused delays," so we use the "plain and ordinary meaning of the term and interpret it within the context of the statute." *Tex. Health & Hum. Servs. Comm'n v. Estate of Burt*, 689 S.W.3d 274, 280 (Tex. 2024) (quoting *Hogan v. Zoanni*, 627 S.W.3d 163, 169 (Tex. 2021)). Black's Law Dictionary defines "own" to mean "[t]o rightfully have or possess as property; to have legal title to." *Own*, Black's Law Dictionary (12th ed. 2024); *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017) ("To determine a statutory term's common, ordinary meaning, we typically look first to their

14

dictionary definitions . . . .").

The Fund does not "own" the risk management program under Section 271.153 because it does not "possess as property" or have "legal title" to the program. Rather, the program is a creature of contract that the Fund administers. It is undisputed that the program was born of the contractual relationship between the Fund members through an interlocal agreement, and that the Fund was created as a self-insurance pool to administer the program to its member entities pursuant to the Texas Interlocal Cooperation Act. The College became a Fund member when it executed the Interlocal Agreement and subscribed to the Fund's property coverage when it signed the CCS. Per the terms of the Interlocal Agreement, "[t]he Fund is an administrative agency of local governments (Fund Members) that cooperate in performing administrative services and governmental functions relative to risk management." The Fund thus does not "own" the program but administers it.

We sustain the Fund's second issue.

## II. The College's Motion to Dismiss.

The College, in addition to the question of mootness discussed in Part I.A., raises two other issues in its motion to dismiss. First, the College disputes that the trial court proceedings are automatically stayed under Section 51.014 of the Texas Civil Practice & Remedies Code pending disposition of this appeal because the Fund did not comply with the statutory requirements necessary to trigger the stay. Second, the College contends that this Court lacks jurisdiction over the Fund's appeal of the trial court's order granting the College's partial summary judgment motion because it is interlocutory. The Fund responds that it complied with the statutory requirements for the automatic stay.

Regarding whether the automatic stay is in place while this appeal is pending, our resolution of this appeal disposes of this appeal and so this issue is

15

moot. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 162 (Tex. 2012) ("Put simply, a case is moot when the court's action on the merits cannot affect the parties' rights or interests."). Regardless, the Fund did not improperly appeal the trial court's order granting the College's partial summary judgment motion. The Fund's notice of appeal does not contest the entirety of the order, only its denial of the jurisdictional challenges raised in the Fund's response to the College's partial summary judgment motion. The Fund's governmental immunity defense, which the Fund asserts to challenge the trial court's jurisdiction on the College's affirmative defenses and request for consequential damages, is one of the defenses upon which the College's summary judgment was granted. The applicability of the governmental immunity defense is the issue the Fund raises before this Court.

The trial court order does not expressly reject the Fund's governmental immunity defense in its order granting the College's partial summary judgment motion, but it did not need to. "[I]f a trial court rules on the merits of an issue without explicitly rejecting an asserted jurisdictional attack, it has implicitly denied the jurisdictional challenge." *City of Hous. v. ATSER, L.P.*, 403 S.W.3d 354, 357 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). "This implicit denial satisfies section 51.014(a)(8) and gives the court of appeals jurisdiction to consider an otherwise impermissible interlocutory appeal." *Id.*; *Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006) ("The Legislature provided for an interlocutory appeal when a trial court denies a governmental unit's challenge to subject matter jurisdiction, irrespective of the procedural vehicle used." (citing Tex. Civ. Prac. & Rem Code § 51.014(a)(8))). In granting the College's partial motion on the Fund's governmental immunity defense, the trial court implicitly denied the Fund's jurisdictional challenge via that defense to the College's affirmative defenses and request for consequential damages.

We deny the College's motion to dismiss.

16

## CONCLUSION

We deny the College's motion to dismiss. We reverse in part the trial court's order denying the Fund's plea to the jurisdiction and implicitly denying the Fund's summary judgment motion as to whether governmental immunity bars the College from requesting consequential damages. We also reverse in part the trial court's order granting the College's partial summary judgment motion on this same issue.

We affirm in part the trial court's order denying the Fund's plea to the jurisdiction and implicitly denying the Fund's summary judgment motion as to whether governmental immunity bars the College's affirmative defenses. We also affirm in part the trial court's order granting the College's partial summary judgment motion on the same issue.

We render judgment dismissing the College's request for consequential damages and remand for further proceedings.

<u>/s/ April Farris</u>
April Farris
Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.

17